UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MELINDA FREY and YAJAIRA RUIZ MERCEDES,
Individually and on behalf of all other persons
similarly situated,

    Plaintiffs,        CV 09-5430
                (Wexler, J.)

  -against-

BEKINS VAN LINES, INC. TRIPLE CROWN
MAFUCCI STORAGE CORP., TRIPLE CROWN
MOVING & STORAGE, INC., JUDD LEVINE,
PAUL LEVINE and JOHN DOES #1-10,
JOINTLY and SEVERALLY,

       Defendants.
-----------------------------------------------------------------X
APPEARANCES:

  LEEDS MORELLI & BROWN, P.C.
  BY: JEFFREY K. BROWN, ESQ.
  Attorneys for Plaintiff
  One Old Country Road, Suite 347
  Carle Place, NY 11514

  THE CULLEN LAW FIRM
  BY: JOSEPH A. BLACK, ESQ.
    DANIEL E. COHEN, ESQ.
  Attorneys for Plaintiffs
  1101 30th Street, N.W. Suite 300
  Washington, D.C. 20007

  GOTTLIEB & ASSOCIATES
  BY: JEFFERY M. GOTTLIEB, ESQ.
  Attorneys for Plaintiffs
  150 East 18th Street Suite PHR
  New York, New York 10003

  BARRY N. GUTTERMAN & ASSOCIATES, P.C.
  BY: BARRY N. GUTTERMAN, ESQ.
  Attorneys for Defendant Triple Crown Mafucci Storage Corp.,
  Triple Crown Moving & Storage, Inc., Judd Levine, Paul Levine
  85 Davids Way
  Bedford Hills, New York 10507

1

DOMBROFF GILMORE JACQUES & FRENCH
BY: KAREN M. BERBERICH, ESQ.
Attorneys for Defendants Bekins Van Lines, LLC
40 Broad Street Suite 701
New York, New York 10004-2382

WEXLER, District Judge

This is an action commenced by three Plaintiffs alleging federal and state causes of action arising out of the Plaintiffs' shipment of household goods by the Defendant companies. Plaintiffs claim, inter alia, that Defendants are engaged in a pattern and practice of quoting lower shipping prices than those ultimately charged – a practice referred to as "low-balling" estimates – with the intent of charging higher amounts. Defendants are also accused of overcharging their customers with respect to a variety of add-on services, including fuel supplements and insurance premiums on policies that Defendants are alleged never to have obtained.

Defendants have previously moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint. In the context of that motion, Defendants argued that Plaintiffs' state law claims were preempted by a broad theory of field preemption, as well as by a specific statutory provision. In a Memorandum and Order dated October 25, 2010, this court rejected the preemption arguments raised. Frey v. Bekins Van Lines, Inc., 748 F. Supp.2d 176 (E.D.N.Y. 2010). Presently before the court is Defendants' motion, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Like the earlier motion, this motion seeks dismissal on the ground of preemption, albeit on a different ground. Upon review of this new argument, and for the reasons set forth below, the motion is granted.

## BACKGROUND

I.      The Parties and Plaintiffs' Allegations

The court assumes familiarity with the identity of the parties and the facts as set forth in the court's prior decision denying the motion to dismiss. Briefly stated, Plaintiffs are individuals who have used Defendants' shipping services. Plaintiffs' shipments originated in New York and terminated in their current states of residence. Defendant Bekins Van Lines, LLC ("Bekins") is a motor carrier engaged in the business of transporting household goods. It is a party to an agency agreement with Defendant Triple Crown Mafucci Storage Corporation, ("Mafucci"), pursuant to which Mafucci acts as Bekins' agent in the transportation of, inter alia, household goods.

All Plaintiffs question the veracity of Defendants' statements regarding their shipments, including those as to estimates and the weight of their goods. In addition to alleging a variety of sharp business practices, it is alleged that the weight tickets submitted to customers were false, fraudulent and/or altered by Defendants.

II.     The Prior Motion to Dismiss

As noted, Defendants' first motion to dismiss, made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, sought dismissal of the state law claims on, inter alia, the ground of preemption.[1] In the context of that motion, Defendants argued that the claims were barred by both "field preemption," i.e., that Congress has evidenced an intent to occupy completely the field of matters arising out of the interstate transport of household goods, and by specific statutory preemption. The specific statutory preemption ground raised in the first motion argued that Plaintiffs' state law claims were preempted by 49 U.S.C. § 14706(a)(1),

---

[1] The first motion to dismissal also raised grounds not discussed herein. The court's disposition of those arguments is not repeated here.

3

referred to as the "Carmack Amendment," a provision that imposes liability on carriers for "actual loss or injury to the property," shipped. 49 U.S.C. § 14706(a)(1).

With respect to the specific statutory argument, the court held that the Carmack Amendment applied only to claims involving damage to goods. As no such claims are raised here, the court held that the Carmack Amendment did not preempt Plaintiffs' state claims. See Frey, 748 F. Supp.2d at 181. Turning to the issue of field preemption, the court held that the federal government's regulation evidenced no intent to preempt entirely all claims arising out of the shipment of household goods. Id. In so holding, the court relied on the plain language of 49 U.S.C. § 13103, which states, "except where otherwise provided in this part, the remedies provided under this part are in addition to remedies existing under another law or common law." 49 U.S.C. § 13103. Thus, the court concluded that Plaintiffs' claims can "easily stand side by side, and do not conflict with Federal shipping regulations." Id.

III. The Present Motion

The motion presently before the court again relies on preemption. In this motion, Defendants again argue that Plaintiffs' state law claims are preempted by a specific federal statute. While Plaintiff's first motion argued specific preemption based upon the Carmack Amendment, this motion argues for preemption based upon a different statute, 49 U.S.C. §14501(c)(1) ("Section 14501(c)(1)"), a provision of the Interstate Commerce Commission Termination Act of 1995 (the "ICCTA").

## DISCUSSION

I. Preemption

A. Legal Principles

The Supremacy Clause of the United States Constitution "invalidates state laws that 'interfere with, or are contrary to,' federal law." Hillsborough County v. Automated Med. Labs.,

4

Inc., 471 U.S. 707, 712 (1985) (quotation omitted). Preemption of state laws can be either express or implied. State law is expressly preempted where "a federal statute expressly directs that state law be ousted." Air Transport Ass'n of America, Inc. v. Cuomo, 520 F.3d 218, 220 (2d Cir. 2008), quoting, Ass'n of Int'l Auto. Mfrs. v. Abrams, 84 F.3d 602, 607 (2d Cir.1996); see e.g., Island Park, LLC v. CSX Transp., 559 F.3d 96, 101 (2d Cir. 2009) (referring to express statutory preemption provision of Interstate Commerce Commission Termination Act, 49 U.S.C. §10501(b), stating that "the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law").

B. Section 14501(c)(1)

Section 14501(c)(1), is a broad preemption provision. It applies to "motor carriers of property," and provides, in pertinent part, that a State may not "enact or enforce a law . . . related to a price, route, or service" of any such carrier. 49 U.S.C. §14501(c)(1). Specifically exempt from this preemption provision are: (1) state safety regulatory powers; (2) insurance requirements and (3) intrastate shipment of goods. See 49 U.S.C. §14501(2)(3). Those exemption and not relevant here.

II. Disposition of the Motion

The issue here is the proper interpretation of the phrase "related to a price, route, or service of any motor carrier." 49 U.S.C. §14501(c)(1). More specifically, the court here must determine whether Plaintiffs' state law claims, which allege, inter alia, fraud, negligence, and the violation of state consumer protection laws, amount to enforcement of state law that is "related to a price, route, or service" of the named motor carriers. In support of the claim of preemption, Defendants argue that the language of the statute is, on its face, sufficiently broad to preempt the present action. Additionally, it is argued that the statute's legislative history, a 2007 consumer protection report of the Government Accounting Office (the "GAO Report"), and case law

interpreting an identically worded preemption provision that appears in the Airline Deregulation Act of 1978 (the "Airline Act") all point to preemption.

Defendants' last stated argument is most compelling, and the court finds it to be dispositive. The preemption clause in the Airline Act provides that no state may enforce any law "relating to rates, routes or services." See 49 U.S.C. §1305(a)(1). With exception of the fact that the Airline Act refers to "rates," and the ICCTA refers to "price," the language of preemption is identical. Most importantly, both preemption provisions use the broad term "relating to," when describing the scope of preemption.

As recognized by the Supreme Court in Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992), the ordinary meaning of "related to" is "a broad one -'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with . . . .'" Morales, 504 U.S. at 383, quoting, Black's Law Dictionary 1158 (5th ed. 1979). Such words "express a broad pre-emptive purpose." Id. In Morales, the Supreme Court held the Airline Act's language of preemption sufficiently broad to bar state regulation of airline rate advertising. Id. at 391.

The Court held similarly in American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995), when it held that the Airline Act preempted actions brought pursuant to state law consumer protection statutes. There, the court held that the Airline Act preempted actions alleging that the administration of a frequent flyer program was a deceptive practice that violated state consumer protection law. Wolens, 513 U.S. at 226.[2]

---

[2] The Court in Wolens was clear to hold that the Airline Act did not preempt routine breach of contract claims, as such claims are do not allege violation of state-imposed obligations, but of obligations that are contractually self-imposed. Wolens, 513 U.S. at 228-29. The viability of any breach of contract claim, however, is not at issue here, as any such claim was previously dismissed. See Frey 748 F. Supp.2d at 182.

6

In Rowe v. New Hampshire Motor Transport Ass'n., 552 U.S. 364 (2008), the Supreme Court made clear that its interpretation of the Airline Act's broad language of preemption applies with equal force to the broad language at issue here, i.e., that set forth in the ICCTA. Rowe, 552 U.S. at 370. When this broad interpretation is applied to the claims here, the court can easily conclude that state laws with respect to fraud, negligence, unjust enrichment and consumer protection "relate" to the services of a motor carrier, and are therefore barred by Section 14501(c)(1). Any other interpretation of the "related to" language would be strained, and far too narrow to encompass the plain meaning of such a broad term.

Other courts faced with this issue are in agreement. Thus, in Huntington Operating Corp. v. Sybonney Exp., Inc., 2010 WL 1930087 *3 (S.D. Tex. 2010), the court dismissed as preempted by Section 14501(c)(1), state law claims brought against an interstate shipper that, like those alleged here, were based upon state deceptive trade practices act, negligence, and negligent misrepresentation. Similarly in Yellow Transp., Inc. v. DM Transp. Management Services, Inc., 2006 WL 2871745 (E.D. Pa. 2006), the court dismissed, on Section 14501(c)(1) preemption grounds, state law claims brought against a shipper of interstate goods. There, the dismissed claims alleged misrepresentation, unjust enrichment, quantum meruit, and fraud. Yellow Transp., 2006 WL 2871745 *3. Accord Mastercraft Interiors, Ltd. v. ABF Freight Systems, Inc., 284 F. Supp.2d 284, 288 (D. Md. 2003) (dismissing as preempted by Section 14501(c)(1) state law claims brought against shipper of interstate goods alleging misrepresentation, negligent misrepresentation and unjust enrichment); Deerskin Trading Post, Inc. v. United Parcel Service of America, Inc., 972 F. Supp. 665, 672 (N.D. Ga. 1997) (dismissing as preempted by Section 14501(c)(1) state law claims brought against shipper of interstate goods alleging common law fraud, statutory fraud, negligence, gross negligence, unjust enrichment and imposition of constructive trust). Each of these courts are in agreement in

holding that non-contractual state law statutory and tort claims fall within the ICCTA's language of preemption, and are therefore barred. As noted above, this court agrees.

Having held that the ICCTA preemption clause bars Plaintiffs' state law claims, the court need not address Defendants' other arguments. The court notes, however, that with respect to the GAO Report relied upon, the court agrees that the report evidences the concern of the agency as to the adequacy of federal protection of the rights of consumers who ship household goods. See generally "Consumer Protection Some Improvement in Federal Oversight of Household Goods Moving Industry Since 2001, but More Action Needed to Better Protect Individual Consumers," GAO 07-586, Consumer Protection, available online at www.gao.gov/cgi-bin/getrpt?GAO-07-586. The GAO Report studied the protection afforded by federal law to interstate shippers of goods, as well as the protection afforded by certain state laws to consumers who ship goods on an intrastate basis. It was concluded that more action was necessary to protect consumer rights.

It is worth noting that when the GAO Report discusses state law, it refers to what *might* occur if state consumer protection laws were to be applied to the interstate shipment of goods, using phrases such as the "potential to enhance protection" for consumers "if state consumer protections were applied to interstate movers." This language implies that the GAO study presupposes the fact that consumers shipping goods interstate are not afforded the protection of state law. The fact that the GAO Report concludes that consumers need greater protection, and that such protections might be afforded by allowing states to enforce consumer protection laws, does not mean that such laws are not preempted. It means only what it says – that greater protections are desirable. This conclusion does not speak to the preemption issue. Moreover, it matters not that the state laws sought to be enforced might be consistent with the purposes of the ICCTA and/or the concerns set forth in the GAO Report. Broad preemption displaces all state

laws, not only those that further inconsistent purposes. See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 387 (1992).

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss is granted with respect to all remaining state law claims. Thus, the court hereby dismisses Plaintiffs' fifth cause of action, alleging violation of New York General Business Law Sections 349 and 350; the sixth cause of action alleging a violation of NYCRR §814.7; the seventh cause of action alleging unjust enrichment; the eighth cause of action alleging fraud; the ninth cause of action alleging negligence; the tenth cause of action alleging negligent misrepresentation, and the eleventh cause of action alleging violation of good faith and fair dealing based upon the same factual allegations alleged in support of the dismissed causes of action. Discovery as to the remaining causes of action shall continue.

SO ORDERED

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
August 9, 2011